## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **ORD STRUCTURE INNOVATIONS, LLC,** | |
| Plaintiff, | Case No. 11 C 3307 |
| v. | |
| **ORACLE CORPORATION and ORACLE AMERICA, INC.,** | Hon. Harry D. Leinenweber |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Oracle Corp.'s and Oracle America, Inc.'s (hereinafter, collectively, "Oracle") Motion to Transfer Venue. For the reasons stated herein, the Motion is granted.

### I. BACKGROUND

ORG Structure Innovations, LLC ("ORG") is a Texas limited liability company with its principal place of business in Woodway, Texas. Both Oracle Corp. and Oracle America are Delaware corporations, with their principal place of business in Redwood Shores, Calif.

ORG filed suit in this district in May 2011 alleging that Oracle infringed three of its business method patents through 20 computer software products. The patents, entitled "Systems and

Methods for Rule Inheritance," apparently concern ways to manage roles and hierarchies within an organization.

Defendants responded with their own lawsuit, filed in the Northern District of California, alleging that the instant suit is violation of a licensing agreement between Paul Morinville ("Morinville"), inventor of the patents-in-suit, a Texas company called Internet Business InfoStructure Group, Inc., and Bridgestream, Inc. ("Bridgestream"). Shortly after the licensing agreement was reached, Oracle acquired Bridgestream, located in San Francisco, Calif. Subsequently, Morinville assigned the patents to ORG. Oracle contends that the licensing agreement gave Bridgestream (and its successors) a license to the Morinville patents and contained a covenant barring patent infringement suits over current and future products by Bridgestream and its affiliates. Additionally, Oracle contends that ORG is bound by the licensing agreement, which requires that any breach of contract suit be brought in the Northern District of California.

ORG responded by amending its Complaint in the instant suit to allege that its contentions of infringement do not extend to products covered by the license. ORG contends that after acquiring Bridgestream, Oracle developed additional products using the patented features, or acquired other companies that produced infringing products. Oracle now seeks to transfer the instant suit to the Northern District of California.

## II.  **LEGAL STANDARD**

Although this is a patent case, motions to transfer venue do not raise issues unique to the Federal Circuit's jurisdiction, so this Court will apply Seventh Circuit precedent in deciding the motion.  *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010).  A district court may, even when a suit is filed with proper venue, transfer the suit to another district where it could have been brought if such a transfer is for the convenience of the parties and witnesses and in the interests of justice.  28 U.S.C. § 1404(a).

In ruling on such a motion, the court considers the totality of the circumstances.  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).  The movant, Oracle, has the burden of establishing that the transferee forum is clearly more convenient.  *Id.* at 219–20.  The movant must show:  (1) that venue and jurisdiction are proper in both the transferor and transferee courts; (2) that transfer is for the convenience of the parties and the witnesses; and (3) that the transfer is in the interest of justice.  *Id.* at 219.  The parties agree that venue and jurisdiction are proper both here and in the Northern District of California, so the first factor is not in dispute.  The Court will consider the next two in turn.

## A. Convenience of the Parties and the Witness

In evaluating the convenience of the parties and the witnesses, the court considers: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to proof; (4) the convenience of the witnesses; and (5) the convenience of the parties. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000).

### *1. Choice of Forum*

The plaintiff's choice of forum is generally given deference, although to a lesser degree when the plaintiff is litigating in a foreign forum. *Illumina v. Affymetrix, Inc.*, 09 C 277, 2009 WL 3062786, at *2 (W.D. Wis. 2009) (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 255-56 (1981)). Here, ORG is a Texas limited liability company, and this district has "relatively weak" connection to the facts underlying the claim, so the Court will give only slight deference to ORG's choice of forum. *See Unomedical A/S v. Smiths Medical MD, Inc.*, 09 C 4375, 2010 WL 2680144, at *2 (N.D. Ill. June 30, 2010) (internal citations omitted).

### *2. Situs of Material Events*

As for the situs of the material events, the allegedly infringing products were primarily developed in Northern California by companies headquartered there, including Oracle and companies acquired by Oracle. In some cases, the accused products were

developed in other locations throughout the country and overseas, but never in Illinois. The relevant documentation related to sales and marketing also is located in the Northern District of California. In a patent case, the situs of material events is the place where the alleged infringer develops, manufactures, and sells the accused product because that is the place that gives rise to its potential liability. *Thermapure, Inc. v. Temp-Air, Inc.*, 10 C 4724, 2010 WL 5419090, at *6 (N.D. Ill. Dec. 22, 2010). Although it is undisputed that some sales of the product occurred in this district, most of the material events occurred in California, weighing in favor of transfer. *See Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. P'ship,* 807 F.Supp. 470, 474 (N.D. Ill. 1992) ("Intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's principal place of business is often the critical and controlling consideration.").

ORG is correct that some courts within this district have held that the location in which the allegedly infringing product was designed (and the situs of material events itself) is "largely irrelevant" in patent cases because infringement is determined by comparing the allegedly infringing device with the language of the claim. *Kolcraft Enters., Inc. v. Chicco USA, Inc.*, No. 09 C 3339, 2009 U.S. Dist. LEXIS 101605, at * 8 (N.D. Ill. Oct. 23, 2009).

However, the Federal Circuit continues to give consideration to the location in which the allegedly infringing products were developed, and the Court considers this persuasive authority. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (taking into account location where products were researched, designed, and tested).

### 3. *Ease of Access to Proof and Convenience of the Witnesses*

Next, Oracle argues that the relative ease of access to proof favors transfer to California because Oracle's documents are located there, as are potential witnesses who work (or previously worked) at the California companies involved.

First, as to documents, the Court notes that because of technological advances all relevant documents can be made available via electronic means. *See Bajer Design & Mktg., Inc. v. Whitney Design, Inc.*, 09 C 1815, 2009 WL 1849813, at *3 (N.D. Ill. June 26, 2009). As such, some courts, including courts within this District, place little weight on this factor. *See id.* And in the instant case, Defendants already have made a substantial document production via electronic means and all documents must be sent to Plaintiff's counsel in Georgetown, Texas and defense counsel in Denver, Colorado. This weighs against transferring the case simply because of the availability of documentary evidence in California.

However, Oracle also argues that a substantial number of witnesses reside in the Northern District of California, which is

- 6 -

to be considered in determining both the relative ease of access of proof and the convenience of the witnesses. All but one of the companies that developed the accused products, and were subsequently acquired by Oracle, are headquartered in the Northern District of California. Oracle asserts that employees of these companies may be fact witnesses to the design, development, and operation of these products. The attorneys who prosecuted the patents are based in Austin, Texas, and according to Oracle have no connection to Illinois. Further, Oracle contends that the authors of at least five cited prior art references reside in California. However, the inventor of the patents, Paul Morinville, is a resident of La Porte, Indiana, and is within the subpoena power of this Court.

In its initial disclosures, Oracle listed Morinville and the Texas attorneys as persons likely to have discoverable information. It listed numerous Oracle employees and former employees of Bridgestream, including Mark Tice, the former chief executive officer of Bridgestream. It also listed a California resident named James Riley as a person who may have information about the licensing agreement, although his ties to this case are not clear. Oracle's disclosures also listed generally (although not by name) former employees of Internet Business InfoStructure Group and the authors and inventors of any prior art identified in the patents-in-suit.

The fact that most of the potential witnesses are located in Northern California weighs in favor of transfer. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009); *see also In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (holding that fact that most witnesses and evidence are closer to transferee venue weighs heavily in favor of transfer, particularly were few convenience factors favor the venue chosen by the plaintiff).

Ordinarily, the fact that the inventor, Morinville, is within the subpoena power of this Court would weigh somewhat against transfer, both to ensure access to his testimony and to minimize any inconvenience he might experience in testifying. However, Defendants point out that Morinville has already consented to the jurisdiction of the Northern District of California in the related breach of contract dispute. Additionally, the Court notes that while Morinville no longer owns the patents, it appears that he remains aligned with the Plaintiff in that his contact address on ORG's initial disclosures is the address for ORG's attorneys. It is unlikely that compulsory process would be required in order to obtain his testimony. And with the exception of Morinville, it appears that California is a more convenient venue for most of the potential witnesses.

### 4. *Convenience of the Parties*

Finally, the Court must consider the convenience to the parties of litigating in each forum. In evaluating this factor,

courts consider the parties' residences and their ability to bear the expense of litigating in the forums in question. *Brandon Apparel Grp., Inc. v. Quitman Mfg. Co. Inc.*, 42 F.Supp.2d 821, 834 (N.D. Ill. 1999). Neither party is a resident of this district, and neither argues it is financially unable to litigate the case either here or in the Northern District of California. Clearly it would be more convenient for Oracle to litigate this case in Northern California. Just as clearly, ORG prefers to litigate here. As such, this factor is a wash. *See Thermapure*, 2010 WL 5419090, at *8.

In sum, although the Court gives some deference to ORG's choice of forum, the Court finds that the private interest factors, particularly the situs of material events and the convenience of the witnesses, weigh in favor of transfer of this case to the Northern District of California.

## B. Interests of Justice

In considering the interests of justice, the court is to focus on the efficient administration of the court system. *Bajer Design & Mktg.*, 2009 WL 1849813, at *4. Factors include "the speed at which the case the case will proceed to trial, the court's familiarity with the applicable law, the relation of the community to the occurrence at issue, and the desirability of resolving controversies in their locale." *Id.* (quoting *Amoco Oil Co.*, 90 F.Supp.2d at 961-62).

Here, the parties agree that both courts are familiar with the applicable law, so that factor is neutral. ORG, citing statistics from a recent article in the American Intellectual Property Law Association's quarterly journal, argues that patent cases are resolved, on average, four months quicker in this district than the Northern District of California. Mark A. Lemley, *Where to File Your Patent Case*, 38 AIPLA Q.J. 1, 15–16 (2010). Although the disparity is not great, this weighs slightly against transfer.

However, the majority of the accused products were developed in Northern California, and Oracle is headquartered there. This gives the Northern District of California a local interest that this Court does not possess. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (observing that in a patent case the district that is home to the alleged infringer has an interest because "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."). This factor weighs in favor of transfer. While Oracle has offices within this district and acknowledges that it sells and offers for sale here the allegedly infringing products, the sale of products alone carries little weight when the accused products are sold nationwide. *In re Hoffman-LaRoche*, 587 F.3d at 1338.

Oracle also argues that the related suit in the Northern District of California will determine whether the instant suit

- 10 -

violates the license agreement between Morinville and Bridgestream. ORG, on the other hand, notes that the California suit is the subject of a pending motion to dismiss set for hearing on December 13, 2011. ORG also accuses Oracle of filing suit in the Northern District of California as a way to manufacture a tie to that district. Without judging the merits of the California suit, the Court can see the advantage of having the suits decided by the same court because they raise similar issues as to the scope of the licensing agreement. Taking all of this into consideration, the Court finds that the public interest factors weigh in favor of transfer to the Northern District of California.

### III. CONCLUSION

For the reasons stated herein, Oracle's Motion to Transfer the instant case to the Northern District of California is granted.

**IT IS SO ORDERED.**

                                                    Harry D. Leinenweber, Judge
                                                    United States District Court

**DATE:** 9/22/2011